Good morning, Chief Judge McKee, Judge Slobiter, Justice O'Connor, Mr. Degnan. Good morning. May it please the Court, my name is David Holler. On behalf of the appellant, Nicholemedical Equipment&Supply, I would like to reserve five minutes if I may. In this case, the District Court concluded that Nicholemedical's failure to follow an exhaustive administrative procedures deprives the District Court of subject matter jurisdiction because of 42 U.S.C. section 405H. Honestly, I don't know what administrative procedure was not exhausted. It went the... Well, the issue is whether or not you brought the claims that you brought in the District Court, the State Tort Actions primarily, whether or not you brought those... The procedures were exhausted, the issue was the content of the procedures and whether or not the claims that you asked the District Court to hold on, you first presented to the administrative form. I understand, Your Honor. And obviously, the policy behind all of this is to avoid any premature judicial intervention and obviously, now that that's done, there's no way that it can be premature and we're certainly not asking... Well, but I'm not sure... Hold on a second. I'm not sure that's the only policy. The policy is basically to let the Secretary correct any possible problems and to make sure that the restrictions on 405G are complied with. Otherwise, I guess the Congress thought the entire scheme upon which Medicaid and Medicare are brought will collapse because of the possibility of unlimited claims being brought against persons involved in the programs. And Your Honor, Nicole Medical is certainly not asking the District Court or this Court or anyone else to review, reconsider, or in any way modify the administrative adjudication in this case from the Medicare Appeals Council. It won. We did. And that's kind of the point, Your Honor. Nicole Medical did win. The problem is there is no administrative procedure in which the Secretary of Health and Human Services, the Medicare Appeals Council, or anybody else determines the damages ultimately resulting from the adjudicated misconduct of the auditors in this case. What would be the measure of those damages? Wouldn't it be the amount that you would deny under the Medicaid, Medicare programs for the hospital beds and wheelchairs? Absolutely not, Your Honor. What these auditors did, acting unlawfully, was drive Nicole Medical into insolvency. Yeah, and right. But the dollar cost of their conduct, I can't imagine any measure for assessing the damages other than looking at how much their conduct cost Nicole Medical. And that seems to me got to be measured in the amount of reimbursable payments for the wheelchairs and the hospital beds that would have been otherwise going to Nicole Medical that they didn't get. It seems to me that goes right to the heart of your requesting benefits or reimbursement for expenses, covered expenses, that weren't paid to you, and that seems to run right smack into Sol Fee and Ringling and all those cases that say you've got to bring those claims in the administrative form. Respectfully, Mr. Chief Judge, I have to disagree. Nicole Medical was an ongoing business with employees, with inventory. No, we understand all that. And there was about... Wait a minute. What would have made Nicole Medical whole? I assume it's got to be the money that you didn't get because it was believed you were billing for services that weren't actually rendered. Those dollars would have made Nicole Medical whole and prevented the subsequent collapse of Nicole Medical. Exactly. Okay. And those dollars, the amount of funds you should have been paid, according to your client, under the Medicaid-Medicare program for the equipment, for the wheelchairs and for the hospital bed, that was denied your client. Exactly. And what you're saying is pretty much what the Ninth Circuit Court seems to be saying in our dairy case, and they're looking at the same thing. Our dairy was a case where the claim was allowed without exhaustion because, as I recall it, it was a malpractice claim but on the denial, the failure to provide certain emergency services to the client. It wasn't necessarily a claim for reimbursement for services that were provided. It was very, very different. Well, the point... The... I'm sorry. Yes, the client died. It was wrongful death action. I'm sorry, Judge Sloven. I said the client died. Yes. Nicole Medical died too. Well. You know, this is just as much a wrongful death case as arteries. Well, please. You can't be serious. You're saying that a bankruptcy and liquidation is tantamount to a human being dying? You can bring a wrongful death action for the death of a corporation because its funds are exhausted? Well, Your Honor, I can tell you with all seriousness, a lot of people lost their jobs, lost their livelihoods and lost a lot more. Back up to my question. Are you saying you can maintain a wrongful death... Does Citizen United go that far? No. You can bring a wrongful death action for the corporate bankruptcy? No. Obviously not. Obviously not. I'm trying to make a point here, Your Honor, is that the death of Mrs. Artery rendered the issue of whether or not she should have been provided Medicare benefits rendered it essentially useless because the payment of benefits was not going to bring her back to life. Once Nicole Medical was destroyed by the unlawful conduct of the auditors and once it went out of business, the payment of benefits is not going to resurrect it and bring it back to life. That's sort of the point that I'm making here, Your Honor. So what remedy can the court possibly give you? Well, in this particular case, Nicole Medical is claiming damages. And the measure of those damages is? The value of the ongoing enterprise. As an ongoing business, a business is worth something if it's got inventories and employees and procedures and equipment and experience and knowledge and everything else. It is worth more than a startup corporation that has none of those things. There are 20 years of all those things invested in Nicole Medical that are all destroyed by the unlawful conduct of the auditors in this particular case. And the other part, I guess, about 405H, as long as we're there, is 405H, at least as far as I can see, is talking about the Secretary's determination of Medicare benefits. The auditors are not making any determinations regarding benefits. They are performing auditing functions. You know, you use the term bean counters or checkbook balancers, and I don't mean that in a demeaning way. They're doing it on an industrial scale, and it is certainly complicated, complex. But ultimately, they are never, ever making a determination for benefits. And that is really what Congress is committing to the administrative process. You're saying the people who go in and double check to make sure that services that are billed, the government under the Medicare and Medicaid program, those entities are not making a determination of benefits for their entire job, it seems to me, is to determine whether or not benefits that are billed for or services that are billed for the person billing them is actually entitled to? Well, what I'm saying, Your Honor, is those people are not doing the same thing as the fiscal intermediaries and the carriers under Medicare Part A and Part B. Those people actually are looking at a diagnosis and making a determination about whether or not the prescriptive direction given by the physician is reasonable and necessary under the circumstances. Obviously, that has some predictive, some prospective, some discretionary nature to it. Auditors are coming in after the fact. Everything's already done. They are looking at all the facts in the bright certainty of hindsight and going through to make sure that all the numbers are in the right columns, all the right papers are attached. Doesn't the amendment to the Medicare Act define all those folks basically the same different functions, but they're all defined the same way, vis-a-vis their relationship to CMS? Well, they are all CMS contractors, no doubt, but they do not perform the same function. And what I'm saying here is this is not a benefits determination in the way that we look at a benefits determination as to whether or not a person's qualified, whether it should be paid or how much it should be paid. What the auditors are coming back in later and doing is saying, was everything done right? And that is not in and of itself a benefits determination. And that really is what Congress is saying, Secretary of Health and Human Services, and now Senator for Medicaid and Medicare Services, this is your job. This is what you should be doing. And this is the part we are going to commit to your exclusive jurisdiction. In any event, you started off, Your Honor, that these claims do arise under state law, and clearly they do. I don't know, honestly, how the auditors are acting under the Medicare Act when they are not following the regulations. I see that I only have a few seconds here left. Is there any limit to the amount that you claim Nicole Medical should recover? Is there any limitation? Yeah. There obviously is a limitation. Based on what? Whatever the value of the business is, just like in any other civil case where someone – I see my time is up. May I finish, Your Honor? Yeah, finish. The limitation on damages would be the same as the limitation on damages as if arson had happened and the building had burned down and the building had been destroyed. That would be the same limitation. Thank you. Mr. Daniel? Good morning, Your Honors. May it please the Court. David Dugnan for Tricenturion and NHIC. Your Honors, the case law that the appellees rely on in their briefs is uniformly supportive of the decision of the district court below. Pull the mic up a little bit. Excuse me. Very soft voice. Pull the mic up a little bit. Sorry, Your Honor. So the case law is uniformly supportive of the decision of the district court below on both the immunity question and on the jurisdiction question. I would really like to use – If you're right on arising under and inextricably intertwined – Correct. What I would like to do is use my time really to address some of the factual inaccuracies that have been raised by Mr. Holler today. Okay, well, why don't you use your time that way? Why don't you take a few minutes of your time to answer my question? Sure. If you're right on inextricably intertwined and exhaustion, do we have to get to the immunity issue? The short answer is no, Your Honor. Those are two independently sufficient grounds for dismissal of the case. There have been a number of the courts in the cases that we cited in the Eighth Circuit and the Seventh Circuit have addressed both of those issues where they have arisen, but from time to time courts will only address one or the other. What I'd like to return to is where Mr. Holler left off on this question of auditors and being counters, and I think that it's important to at least recognize that the word auditors does not appear anywhere in the complaint. What we're talking about, Tricenturian in particular is a program safeguard contractor who has responsibilities for doing active investigations of fraud, abuse, waste, and that sort of thing, and it's recognized in the complaint. So I was a little surprised to hear this kind of entity doing this kind of important work referred to as being counters. He said he didn't mean it pejoratively. I understand, and I don't take any offense. And certainly other courts have recognized that these are precisely the kinds of entities and doing precisely the kinds of work that should be entitled to official immunity in a case like this. You keep wanting to go to official immunity. Help me get there. Why doesn't his claim arise out of under 405G of the Medicaid Act? In other words, what am I missing? If it looks to me, if I look at this case and it seems to me that, especially under Soffie and Ringer, those cases, the claim here is inextricably intertwined with the Medicaid Act and that his standing to make the argument is based upon alleged grievances under the Medicaid Act and his legal right, even though it's based in state law, arises from that act, then why is this an immunity question at all, and what am I missing in looking at the case that way? It is, you're not missing anything, Your Honor. I believe that both immunity and the jurisdictional questions are implicated in the case, but to go first to the jurisdictional question, does this arise under the Medicare Act? And to answer that question, I think the best way to do that is to go to the complaint and go to not the first eight pages of, it's filled with a lot of conclusory statements about unlawful conduct. I'd like to get to that in a moment. If you want to spend your time negating conclusory statements in your complaint, you're welcome to do that, but what I would like to do is just go to, when you finally get to the first claim for relief, it's on page 10 of the record, and you look at paragraph 47 of the complaint. Every allegation in that first claim for relief relates to failing to give proper notice for a list of claims that are going to be reopened, failing to properly reopen claims, reopening claims that they weren't supposed to, and so on and so on, and instituting an improper offset. Every one of these things goes to the heart of the responsibilities of the appellees in this case, NHIC and Tri-Centurion. And as far as Tri-Centurion being a program safeguard contractor and the claim in the briefs that no court has ever extended immunity to this kind of entity, it's important to note that this entity is really a recent creation, and NHIC and Tri-Centurion, one is a Medicare contractor, the other is a program safeguard contractor, those two kinds of entities were created when HIPAA was passed, and they basically assumed all the responsibilities of carriers and fiscal intermediaries. It's really an issue of nomenclature. So to say that no court has ever extended immunity to those kinds of entities is a little bit misleading. I don't understand why. I don't understand what you just said. Judge Slobodur, essentially what I'm saying is that HHS, when they reorganized these entities, to confuse all of us, I suppose, just simply changed the names. No, they didn't do it for that reason, but go ahead. Okay, well, they changed the names from carriers and fiscal intermediaries to program safeguard contractors and the Medicare administrative contractors. And those two entities perform precisely the same functions as the fiscal intermediaries and the carriers did that preceded them. Okay, but why should we let Tri-Centurion get away with hurting what it obviously did, Nicole Medical? Your Honor, what Nicole Medical wants is more than it got at the administrative review level. And what Congress determined in passing the Medicare statute was that the role of judicial review was going to be limited and the kinds of claims that you could bring when you are a Medicare provider and you are availing yourself of that relationship, that that is the limitation on judicial review. And that is just a balance that Congress struck because it did not want Medicare contractors doing this kind of work to be burdened with lawsuits in district court. So they set up a comprehensive scheme to address any grievances. And again, what Nicole Medical wants in this case is something more. It wants to get its business back. That's what it wants. Correct. But under the statute, it has gotten the amount of relief that it is entitled to as Congress has established. Well, the court has not to decide that. I agree with you. But when you look to the other courts that have considered cases very much like this, the body metric case from the Seventh Circuit, Midland Psychiatric from the Eighth Circuit, in those cases the plaintiffs who were also Medicare providers brought very similar grievances. Grievances like tort claims, tortious interference, tortious interference with contract. And in each of those cases the plaintiffs complained that they had no avenue for relief at the administrative level. And the courts consistently held that while that may be true, they got all of the relief that Congress intended them to get when they passed the Medicare Act. Judge McKee, I know that you wanted to stay on the question of jurisdiction. I did want to touch on the Arderi case for a moment because I think you were absolutely right about that. That case is unlike all the other cases that are exactly like this one, which is to say with a Medicare provider suing a fiscal intermediary or a carrier or a program safeguard contractor under theories of tort and other state law claims. Because in that case what the court was concerned with was a dilution of patient's rights. That was, as you said, a wrongful death action by the family of the individual who died. And the court limited its decision to that case. And we don't need to speculate about whether that decision was limited because the Ninth Circuit just two years later in the Kaiser case explicitly said that that case was limited to patients receiving medical care and their ability to redress medical malpractice under those circumstances. And the court in Kaiser explicitly referenced body metric and Midland psychiatric as being precisely on all fours with that case, which is also on all fours with this case. On the question of, and this really I suppose goes to the immunity question, the complaint and the briefs filed on behalf of Nicole Medical repeatedly state that these two entities were engaged in unlawful conduct without saying what way it was unlawful. There are references to the decisions of the administrative law judge and the Medicare Appeals Council who they say found error and found that these two entities were acting unlawfully. If you look at those two decisions which are attached to the complaint, all that they found were technical violations of the regulations that apply to these entities when they go to reopen claims. And in fact, they did not even find that any of those substantive decisions on those claims. For example, it was found by Tricenturian that 18 of 19 claims for payment for wheelchairs were improper for a variety of reasons, mostly having to do with the fact that the patients really didn't need them. There was no finding that that substantive address of the claims was improper, but merely they had reopened those claims too late and for that reason they violated a procedural requirement. In any event, they held, I guess at the council level especially, that his client was entitled to monies that were denied his client because of their client. Correct. And there's no dispute that they prevailed and that they were told that they were entitled to the $100,000 or so that constituted the improper offset and retention of those claims. So if that improper offset caused them to go belly up, why can't they get compensated for consequential damages? Because there's simply no avenue for that relief under the statute because the Medicare statute is narrowly drawn and Congress has determined that there is going to be a very limited judicial review. That's why they bring the state law claims. That's why they bring the state law claims, because they want something more than they got at the administrative level. Well, but you're always taking appeal because you want something more than you got. Otherwise, you'll be out of a job. That's why you're taking appeal. That's right, but Judge McKee, you were correct earlier that even with these state law claims, for which there may be no remedy at the administrative level, under the statute they're still required to present those state law claims and they certainly did not do that and that was fundamentally the basis for the district court's holding that it lacked jurisdiction to hear those claims. If the court doesn't have any further questions, we'll rest on our brief. Thank you very much for your time. How do you answer the question he poses that they're just not entitled to this? That they're just not entitled to it. That's right. They're not entitled to get their business done. Well, if Congress had meant to preclude any type of state law claim that in any way related to Medicare, I think they probably would have said so. Isn't that what 45G says? No, Your Honor, I don't think it does, and I think the Ardery case spells that out in some detail about why it didn't. That having reviewed the legislative history, there actually is no indication there that Congress intended to get rid of everything, only prevent Medicare benefits determinations from being decided outside the venue of the Secretary's administrative procedures. As to Mr. Degnan's reference to the technical violations, I'm sure there are a number of former Medicare providers who are right across the street over here in the federal prison for technical violations of the regulations. But, Your Honor, Chief Judge McKee, you were talking about inextricably entwined. If you look at bottom metric, if you look at Kaiser, if you look at Midland Psychiatric, even if you look at the Eastern District's more recent decision in regional medical transportation, they all involve fiscal intermediaries and carriers. And in none of those cases, in none of those cases, is there an indication that the carrier or the fiscal intermediary was not following the regulations. And today was actually the first time that I've actually heard any acknowledgement from the Department of Justice that, indeed, the Program Safeguard Coordinator in this particular case did not follow the regulations. And, actually, that's the nature of their job. I mean, that's what they're doing. The ALJ found that, though. I mean, that's not a new thing being tossed into the case. They didn't give adequate notice for the audit. That's what the ALJ found when the case started there. They didn't give adequate notice for the audit. In the statistical formula, that methodology, the ALJ took issue with. They submitted their findings twice to the Department of Justice and OIG. Both times it was rejected because it was determined not to be a fraud claim, and yet they turned around to change the character of it to institute an offset, which at one point in time, the former carrier in the area looked at it, initially started an offset, and then corrected themselves later. Then when the new carrier came in, tried to- I don't understand how any of that helps you. The regulations specifically provide that the-I'll call them the MCS. I guess they're all lopped together under that label. Here it's the program coordinator, the program benefit contractor. That person doesn't have to have total or complete information to act. They can act with just partial information. So if they come in and they get some information that causes them to believe that an offset or recoupment is required, they order that. That clearly didn't give rise to criminal liability, and that's what you just referred to. But that does not necessarily give rise to the cause of action on your part. And if it does give rise to a cause of action on your part, if that cause of action arises under the Act, it seems to me that you've got a real problem with the cases you just mentioned, both bad and those cases. If you're not following the regulations, are you actually acting under the Medicare Act? How do they not follow the regulations? In the exact way the Medicare Appeals Council has already determined that they did not follow the regulations. They did not give proper notice. They improperly moved forward and changed the character of the claim in order to institute that offset in the first place. Does your standing to make that claim, is that based upon the Medicare Act? The core medical standing to come into court and make that claim, is that based upon the Medicare Act? Well, I don't think it is at this point in time, Your Honor. You know, at this point in time, the violation of the Medicare Act itself. The violation of the Medicare Act sounds like you just said you're standing to rise from the Medicare Act. Actually, it's not what I'm saying. What I'm saying is the violation of the Medicare Act is not even a legal issue anymore. It's just a fact in the case at this point in time. Would you have been in court but for the violation of the Medicare Act? No, because Nicole Medical would still be in business. And the fact they're out of business is what gives you the standing to come into court. Exactly, Your Honor. And that's due to the violation of the Medicare Act. Why am I missing the standing bridge there? The standing is once you step outside the Act, once you step outside the regulations, once you take it upon yourself to become judge and jury and not follow the Secretary's regulations. You are no longer acting under the Medicare Act. Now you're acting under your own set of rules. Once you burn up the rule book behind you, you're burning up any claim that you may have to immunity or otherwise. May I finish my answer? I see that there are red lights on here. I understand what you're saying. It's kind of repeating what you said in your prior answer. I do want to thank you for your time.  Thank you very much. Thank you, Your Honor.